714 So.2d 101 (1998)
Ivory GILLIAM, Plaintiff-Appellant,
v.
MANHATTAN/WHITAKER CONSTRUCTION COMPANY, Defendants-Appellants.
No. 30566-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1998.
*102 Donald R. Miller, APLC, Shreveport, for Appellant.
Pettiette, Armand, Dunkelman, Woodly & Byrd by Robert A. Dunkelman, Shreveport, for Appellees.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
PEATROSS, Judge.
Claimant Ivory Gilliam ("Gilliam") appeals from a decision by the Worker's Compensation Hearing Officer denying his claim against his employer for worker's compensation benefits for carpal tunnel syndrome. For the reasons expressed below, we affirm.

FACTS
Gilliam was hired by Whitaker Construction Company in March 1993 to work as a general laborer on a construction project. When the project on which he was employed to work was completed, he was hired to work as a laborer for Manhattan in August 1993.[1]
As a laborer, Gilliam was required to perform a variety of tasks, including operating a jackhammer. On October 12, 1993, Gilliam tripped and fell while operating a jackhammer in the course and scope of his employment. Gilliam sustained non-displaced fractures to two ribs. Gilliam was seen initially by Dr. James Hill, who referred him to Dr. Don Joffrion, an orthopaedic surgeon, for further care.
Dr. Joffrion saw Gilliam on two occasions, October 27, 1993, and November 12, 1993. In January 1994, Gilliam changed physicians, seeking treatment from Dr. Baer Rambach. Dr. Rambach last treated Gilliam on May 20, 1994. In August 1994, Gilliam went to the Willis-Knighton Hospital emergency room, complaining of shortness of breath. In October 1994, Gilliam went to the LSUMC emergency room, complaining of muscle spasms down both arms.
Gilliam filed a claim for worker's compensation benefits, OWC Docket No. 94-04011, claiming that, since the October 12, 1993 accident, he had experienced shooting sensations down into his arms and legs that rendered him totally disabled from gainful employment. In a judgment dated August 17, 1995, the hearing officer denied Gilliam's claims, finding that Gilliam's testimony was not credible and was not supported by the medical evidence. No appeal was taken from that decision.
Gilliam was subsequently seen at LSUMC several times, undergoing an EMG and other testing. In an October 12,1995 report of the EMG results, Gilliam was diagnosed as having carpal tunnel syndrome ("CTS").
On February 12,1996, Gilliam filed a claim against the company, OWC Docket No. 96-01106, seeking worker's compensation benefits pursuant to LSA-R.S. 23:1031.1, due to his sustaining an occupational disease, specifically, bilateral CTS. Gilliam claimed his CTS was caused by the repetitive use of a jackhammer during the course and scope of his *103 employment with the company. The company answered, asserting the exceptions of prescription and res judicata.
After a hearing, the hearing officer overruled the exceptions of prescription and res judicata. The hearing officer found, however, that Gilliam had failed to meet the heightened burden of proof required of a claimant asserting a claim for an occupational disease and dismissed Gilliam's claim with prejudice.
Gilliam appealed, asserting one assignment of error.[2]

DISCUSSION
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Seal, supra; Stobart v. State, 617 So.2d 880 (La.1993); Jackson v. Creger Automotive Co., Inc., 29,-249 (La.App.2d Cir. 4/2/97), 691 So.2d 824. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Seal, supra. Reasonable evaluations of credibility and inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, supra; Jackson, supra.
Gilliam assigns as error that the hearing officer erred in "rendering a decision rejecting Plaintiff-Appellant's petition for benefits under LSA-R.S. 23:1031(1) the Louisiana's [sic] Worker's Compensation Act for carpal tunnel syndrome as an occupational disease, particularly denying him benefits pursuant to LSA-R.S. 23:1221(1), et seq, medical expenses, attorney's fees and penalties."
LSA-R.S. 23:1031.1(A) entitles every employee who is disabled because of the contraction of an occupational disease to receive compensation benefits, provided that the employee's illness arises out of and in the course of his employment. LSA-R.S. 23:1031.1(A). LSA-R.S. 23:1031.1(B) specifically includes "work-related carpal tunnel syndrome" in the definition of occupational disease.
LSA-R.S. 23:1031.1(D) provides that any occupational disease contracted by an employee "while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed to be nonoccupational and not to have been contracted in the course of and arising out of such employment." The statute further provides, however, that any occupational disease contracted within the twelve months' limitation shall become compensable when the claimant proves by an "overwhelming preponderance of evidence" that the occupational disease was contracted during the course of the twelve months' employment. LSA-R.S. 23:1031.1(D).
As set forth above, Gilliam worked for the company from March 1993 until October 12, 1993. Thus, Gilliam's employment was for less than twelve months, making applicable the presumption of LSA-R.S. 23:1031.1(D). The issue in the present case, therefore, is whether Gilliam proved by an "overwhelming preponderance of the evidence" that his alleged carpal tunnel syndrome was contracted during the course of his employment with the company.
The term "overwhelming preponderance of the evidence" was discussed and defined by this court in Dibler v. Highland Clinic, 27,-274 (La.App.2d Cir. 9/27/95), 661 So.2d 588. In Dibler, this court stated:
We shall consider the phrase overwhelming preponderance, not as an oxymoron, but something greater than a mere preponderance and something that perhaps is closer to clear and convincing evidence....
To meet the standard of clear and convincing evidence ... a trier of fact's belief in a claimant's self-serving testimony alone is insufficient. Expert testimony of an objective quality that focuses on probabilities is additionally required to meet that *104 standard. Clear and convincing evidence is something less than evidence beyond a reasonable doubt.

* * * * * *
In accord with the ordinary sense of the word overwhelm, we conclude evidence which overwhelmingly preponderates is that evidence, if found credible and objectively supported by the trier of fact, which either is much more probable than, is greatly superior to, or greatly overcomes the evidence to the contrary. Other evidentiary principles, such as positive or affirmative evidence being superior to negative evidence, should also guide the analysis. (Citations omitted and emphasis original.)

Dibler, at 592.
In the present case, Gilliam first filed a claim for his CTS nearly two years after he was last employed by the company. Gilliam argues, however, that his CTS is related to his operation of a jackhammer during his employment with the company. In support of his argument, Gilliam points to his testimony stating that he has experienced the symptoms of CTS since his employment with the company and that the symptoms began before the October 12,1993 fall. Gilliam also stresses that his medical history indicates he had experienced problems with his arms since his employment. Specifically, in 1993, Gilliam was diagnosed with a "contusion of left elbow" and, in 1994, he complained to Dr. Rambach of problems with his left elbow. In March 1995, Gilliam reported to LSUMC personnel that he was experiencing weakness and numbness in both hands.
The company, however, presented the deposition testimony of Dr. Joffrion, who treated Gilliam after his fall in 1993. In Dr. Joffrion's deposition, he testified as follows:
Q. Well, let me ask you to assume that Mr. Gilliam was first diagnosed with carpal tunnel syndrome in September of 1995. Would it be your opinion based upon reasonable medical probability that such a diagnosis is not related to Mr. Gilliam's use of a jackhammer for a nine-month period back before the injury on October 12, 1993?
A. Well, I can't say that it is not, but there is no reason for me to suspect from a medical standpoint that it was.
Q. Okay. So more probably than not, would it be your opinion that it is not related to the use of that jackhammer back approximately two years before the diagnosis is made?
A. Yes.
Dr. Joffrion also testified that when he conducted his initial examination of Gilliam in October 1993, he found no symptoms which would be compatible with CTS. He further stated that, ordinarily, CTS symptoms improve when the patient is removed from the activity causing the CTS.
In ruling, the hearing officer stated that the background, lay testimony and medical testimony must all be considered in determining causation. The hearing officer further noted that Gilliam had a heightened burden with regard to causation and stated that, while Gilliam's testimony could establish that his CTS was work-related, that position was not supported by his history. The hearing officer noted that Dr. Joffrion stated in his deposition testimony that he did not consider Gilliam's CTS to be employment-related. The hearing officer stated that the records did not reflect a consistent, reliable history which would show Gilliam was developing CTS over a period of time. Finding that Gilliam made only a "very weak" showing that his CTS was caused by his work for the company, the hearing officer held that Gilliam had failed to meet the heightened burden of proving his occupational disease was related to his employment.
In support of his argument that the hearing officer erred in rejecting his claim, Gilliam cites Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992). In Bruno, the court stated that, in determining whether the worker has discharged his burden of proof regarding his alleged disability, the hearing officer should accept as true the uncontradicted testimony of a worker, absent circumstances casting suspicion on the reliability of the testimony. The Bruno court found that the claimant's uncontradicted testimony of a work-related accident sufficiently supported *105 her claim, even though the claimant did not provide a history of the alleged accident to the treating physician and did not immediately notify the employer of the alleged accident.
Gilliam urges that, under Bruno, the hearing officer was required to accept as true his testimony. Gilliam essentially argues that his testimony that the CTS was related to his employment with the company was uncontradicted. Gilliam asserts that Dr. Joffrion and Dr. Rambach did not testify that Gilliam did not have CTS and that they were not asked to check for CTS. Gilliam urges, therefore, that no conflict exists among the medical experts.
We do not find this argument persuasive. Initially, we note that Bruno concerned a work-related accident, rather than an occupational disease with a heightened burden of proof. Further, we find significant that the Bruno court stated that, when determining whether a worker has discharged his burden of proving a work-related accident, a hearing officer should accept as true a worker's uncontradicted testimony absent circumstances casting suspicion on its reliability. (Emphasis added.) Bruno, supra. In the instant case, the hearing officer could reasonably have found the medical testimony and history to contradict and/or cast suspicion on Gilliam's testimony. Under the circumstances of this case, Bruno does not require the hearing officer to find Gilliam's testimony alone sufficient to meet his heightened burden of proof.
A hearing officer's determination as to whether a worker is credible and has discharged his burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Bruno v. Harbert Intern. Inc., supra. In the instant case, the hearing officer correctly weighed Gilliam's testimony against the histories presented and the testimony of Dr. Joffrion. On the record presented, we cannot say the hearing officer was clearly wrong in finding that Gilliam failed to prove, by an overwhelming preponderance of the evidence, that his CTS was work-related.

CONCLUSION
For the foregoing reasons, we affirm the hearing officer's decree. Costs of this appeal are assessed to Gilliam.
AFFIRMED.
NOTES
[1] The employer has been variably referred to in the record as Manhattan Construction Co., Whitaker Construction and Manhattan/Whitaker, a joint venture. Since Gilliam's employment status has never been at issue, these titles will be hereinafter referred to collectively as "the company."
[2] The company answered, asserting that the hearing officer erred in overruling its exceptions of prescription and res judicata. Due to our resolution of Gilliam's assignment of error, we pretermit discussion of the issues of res judicata and prescription.