MOORE, J.
| horseshoe Casino appeals a judgment that awarded the claimant, Shellie Futch, supplemental earnings benefits (“SEB”), with a penalty and attorney fee in this workers’ compensation claim arising from a January 2004 accident. We affirm in part and reverse in part.

Factual Background

Ms. Futch was employed as a dealer at Horseshoe, at an average weekly wage of $800 and a comp rate of $429 a week. On January 17, 2004, she was entering the casino through the tunnel when she tripped on an industrial mat that had wrinkled on the floor. She did not fall but stumbled forward, twisting her right foot. Horseshoe sent her to the Willis-Knighton Bossier emergency room, where doctors diagnosed a strain and put her in a splint. Three days later she selected Dr. Michael Aeurio of Orthopedic Specialists in Bossier City as her treating physician. He found degenerative joint disease of the right foot and spurring of the bones — all preexisting conditions.[1] He prescribed physical therapy and initially released her to return to work on February 2, 2004.
Ms. Futch felt she was not improving, and in May 2004 Dr. Aeurio mentioned surgery to remove a Morton’s neuroma in the front part of her foot. At Horseshoe’s request, Ms. Futch was examined by Dr. Gordon Mead at Highland Clinic; he found that all her foot problems were preexisting and that she could work. In October 2004, Ms. Futch went to 12orthopedist Dr. James Lillich, who noted a “traumatic clawtoe deformity of the right second toe.” She then obtained an independent medical exam (“IME”) from Dr. Christopher Hebert in Lafayette. In November 2004, Dr. Hebert recommended extensive surgery to fuse several bones in her midfoot and extend her Achilles and other tendons; Ms. Futch then designated Dr. Hebert as her choice of physician. He performed the proposed operation on February 3, 2005, as well as a followup operation on April 28, 2005, to remove two pins from the surgery site. For the next several months, Ms. Futch attended therapy and paid regular visits to Dr. Hebert; in September 2005, he released her to return to work half-days, or two days a week, for four weeks, and then to full duty. At some point, Horseshoe asked her to return to Dr. Mead for reevaluation.
Ms. Futch filed this disputed claim on August 5, 2005, principally to quash the examination by Dr. Mead; she also sought authorization to see a psychologist. Horseshoe answered that it had been paying her full comp benefits of $429 a week since the accident and all medicals, including both of Dr. Hebert’s surgeries; it also *822 sought an order to compel her to be reexamined by Dr. Mead.
Meanwhile, Ms. Futch returned to work at Horseshoe in late October 2005, but promptly went to Dr. Hebert, tearfully relating that standing up to deal caused “great pain” in her right foot; he told her to stay off work another six weeks. Pursuant to an order from the workers’ comp judge (“WCJ”), Ms. Futch went back to Dr. Mead in November 2005; he found a permanent impairment from the surgeries. He stated, however, that she |3could work in a job where she could sit down.
In late 2005, owing to Ms. Futch’s continued complaints, Dr. Acurio recommended a third operation, to remove another screw from her right foot. He performed this at Bossier Specialty Hospital on January 5, 2006. Ms. Futch then began a long period of almost weekly visits to various doctors — Dr. Acurio for followups, Dr. Letchuman at Pain Care Consultants for foot and other body pains, Dr. Baker for psychological counseling, and Dr. Sewell for depression, anxiety and respiratory issues.
In March 2006, Ms. Futch underwent a two-day functional capacity evaluation (“FCE”) by Steve Allison at Tri-State Physical Therapy. This found that she was capable of restricted, light-duty work; she could return to work as a dealer with the accommodation that she could alternate between standing and sitting as needed.[2] At Horseshoe’s request, she returned to deal mini-baccarat, a game in which the dealer remains seated. However, she stayed only five hours. On a June 13 visit to Dr. Acurio, she complained that she had pain not only walking across the parking lot, but even when sitting behind the mini-bac table, as she still had to use her right foot to “pivot.” Based on these complaints, Dr. Acurio reported that she could not continue in the modified dealer position and should “seek another type of employment.”
Horseshoe discontinued Ms. Futch’s weekly benefits on June 30; however, it continued paying her medical expenses, with the exception of |4visits to Dr. Baker, the psychologist.

Procedural History

On February 26, 2007, Ms. Futch filed the instant amended claim, alleging that the accident aggravated her preexisting psychological condition. She demanded temporary total disability or SEB effective July 1, 2006, and a penalty and attorney fee for Horseshoe’s refusal to cover treatment by Dr. Baker. An Office of Workers’ Compensation mediator held a phone status conference on May 29, 2007, declaring the matter “unresolved.”
Then followed a long period of relative inactivity. Between June 7, 2007, and February 11, 2011, the parties filed 11 motions to continue, all routinely granted by the WCJ.[3] Horseshoe filed a motion to continue on March 14, 2011, stating the parties were in settlement negotiations, the only remaining issue being the Medicare Set-Aside (“MSA”); the WCJ granted this motion to continue. On July 14, 2011, Ms. Futch filed another motion to continue, which the WCJ denied, writing, “Trial has been continued multiple times and claimant’s motion does not assert any reason to do so again.” Undeterred, Ms. *823 Futch filed motions to stay on August 5, 2011, and April 19, 2012; the WCJ granted these. On July 31, 2012, Horseshoe filed a motion to compel Ms. Futch to sign an MSA form; the WCJ granted this. Finally, on October 17, 2012, Ms. Futch sent a pro se letter to the WCJ, stating her desire to “resolve this matter” and “schedule a trial date in my case”; this was filed in the record.
[¿On February 18, 2018, Horseshoe filed the instant motion to dismiss under La. R.S. 23:1209 D, on grounds that the claimant had not, in good faith, requested a hearing and final determination within five years of the amended petition. The WCJ denied this, holding that Ms. Futch had complied with 23:1209 D “on multiple occasions * * * via multiple joint requests that the trial date be continued and set.”[4]

Action of the WCJ

The matter was tried on April 4, 2018. At the top of the hearing, the WCJ reiterated that the joint motion to continue filed August 8, 2008, included a motion to reset, and this qualified as a request for hearing under 23:1209 D. The parties stipulated the date of the injury, Ms. Futch’s weekly comp rate, and that Horseshoe had discontinued weekly benefits on June 30, 2006. The only live witness was Ms. Futch, whose testimony was limited to verifying her medical expenses and mileage to Shreveport to see the psychologist, Dr. Baker (she had moved to Farmerville and was driving to Shreveport to see him). There was no live testimony about her injury, pain, disability or attempt to return to work.
The parties introduced Ms. Futch’s unusually large medical records, very briefly outlined above. By deposition, Dr. Mead testified that Ms. Futch had serious preexisting arthritis, flat feet and subluxation; he felt that the accident could have aggravated these. He also noted her history of fibromyalgia, psoriasis and depression, which were unrelated to the accident, and said most of her current condition was due to arthritis and foot | r,surgeries. Based on the FCE, he thought she should be able to work if she could sit down.
Dr. Acurio testified by deposition that the accident exacerbated her preexisting condition. He admitted there was nothing objective to show that her current pain was a result of the accident, but if she was working before and complaining after, he accepted it. His records showed that he performed yet another surgery, in September 2012, to fuse a bone in Ms. Futch’s right fourth toe.
The WCJ issued written reasons, laying out the lengthy facts and finding that Ms. Futch’s treatment with Dr. Baker was not related to the accident — a ruling not contested on appeal. The WCJ next found that although she was not entitled to TTD, she proved her right to SEB effective July 1, 2006; he distinguished the restrictive reading of SEB in Poissenot v. St. Bernard Parish Sheriff’s Ofc., 2009-2793 (La.1/9/11), 56 So.3d 170, and explicitly accepted Dr. Acurio’s view that even the modified, sit-down job required her to “pivot on her injured right foot,” resulting in severe pain that prevented her from performing the job. Finally, the WCJ found that despite earlier reports that she could do sedentary work, Horseshoe unreasonably refused to pay SEB after receiving Dr. Acurio’s report of June 13, 2006. He assessed a penalty of $2,000 and attorney fee of $7,500.
Horseshoe has appealed, raising three assignments of error.

*824
Discussion: Motion to Dismiss

By its first assignment of error, Horseshoe urges the WCJ erroneously ruled that Ms. Futch requested a final determination of her claim by motions |7or orders to continue, in contravention of La. R.S. 23:1209 D. Horseshoe shows that she filed her amended petition on February 26, 2007, and argues that she did not request a trial setting until October 18, 2012, over five years later. It concedes that during this time she requested or acquiesced in at least 15 continuances, but argues that the motions to continue did not include good faith requests for trial settings: she merely attached an order with a blank setting date, in compliance with OWC Hearing Rules,[5] and this is not an actual, good faith request for hearing and final determination. It suggests that the WCJ’s interpretation of these motions would make § 1209 D meaningless, and that an administrative rule cannot supersede a statute, Clark v. Mrs. Fields Cookies, 2001-0597 (La.App. 4 Cir. 1/30/02), 809 So.2d 514. It concludes the court should have granted the motion to dismiss.
Ms. Futch responds that all motions to continue included a prayer to reset the trial, and specifically cites the motion of August 8, 2008,[6] as coming within five years of the hearing on the motion to dismiss. She also submits that Horseshoe filed, or joined in, several motions to continue, and should not benefit from its own dilatory tactics.
The dismissal of claims for want of prosecution is governed by La. R.S. 23:1209 D, which provides:
[SD. When a petition for compensation has been initiated as provided in R.S. 23:1310.3, unless the claimant shall in good faith request a hearing and final determination thereon within five years from the date the petition is initiated, that claim shall be barred as the basis of any claim for compensation under the Worker’s Compensation Act and shall be dismissed by the office for want of prosecution, which action shall operate as a final adjudication of the right to claim compensation thereunder.
Although there is little jurisprudence applying this subsection,[7] the jurisprudence under La. C.C.P. art. 561 is analogous, as both provisions seek to promote the prosecution of claims.[8] Ordinarily, a *825 motion to continue does not constitute a step in the prosecution of a case. Bourg v. Entergy La. LLC, 12-829 (La.App. 5 Cir. 4/10/13), 115 So.3d 45, writ denied, 2013-1064 (La.6/21/13), 118 So.2d 421. However, the finding that such a valid step in the prosecution of the case occurred is subject to manifest error analysis. Wolf Plumbing Inc. v. Matthews, 47,822 (La.App. 2 Cir. 9/25/13), 124 So.3d 494, writs denied, 2013-2510, 2013-2516 (La.1/17/14), 130 So.3d 949, 950; Hinds v. Global Int’l Marine, 2010-1452 (La.App. 1 Cir. 2/11/11), 57 So.3d 1181. Courts construe abandonment statutes liberally, in favor of maintaining the plaintiffs action; the intent is to dismiss only those cases in which a plaintiffs inaction clearly demonstrates an abandonment, and not to dismiss those in which the plaintiff clearly | Remonstrates no such intent. State v. Cole Oil & Tire Co., 36,122 (La.App. 2 Cir. 7/17/02), 822 So.2d 229, writ denied, 2002-2325 (La.11/15/02), 829 So.2d 436, and citations therein. In short, before an action can be dismissed as abandoned, it must be certain that the claim is not being seriously pursued. State v. Cole Oil & Tire Co., supra, and citations therein.
On this record, we do not find that the WCJ abused his discretion in refusing to declare the claim abandoned. We agree that the motion to continue filed August 18, 2008, is dubious in that it does not actually pray for a trial setting, merely attaching a pro forma order with a blank space in which the WCJ can write a new setting date. Taken alone, this probably would not support a finding of good faith request for a hearing and final determination. However, the persistence of these motions, including motions to stay after the WCJ began denying motions to continue, along with the joint representations that the parties were in settlement discussions, convince us that Ms. Futch did not intend to abandon her claim. There is simply too much activity on both sides to support the opposite conclusion. We therefore find no abuse of discretion. This assignment of error lacks merit.

Award of SEB

By its second assignment, Horseshoe urges the WCJ erred in awarding SEB despite Ms. Futch’s failing to prove by clear and convincing evidence that she was unable to work in an offered position due to substantial pain from her work injury. Horseshoe shows that the claimant’s initial burden is a preponderance of the evidence, La. R.S. 23:1221(3)(a); |10the burden then shifts to the employer to prove that she could work a certain job that was offered or available to her, R.S. 23:1221(3)(c)(i); and then it shifts back to the claimant to prove by clear and convincing evidence that she could not perform that job “solely as a result of substantial pain,” R.S. 23:1221(3)(c)(ii). Poissenot v. St. Bernard Parish Sheriffs Ofc., supra. It argues that to meet the clear and convincing standard, Ms. Futch cannot rely solely on her self-serving testimony, Duhon v. Holi Temp. Servs. Inc., 97-0604 (La.App. 4 Cir. 10/1/97), 700 So.2d 1152; Scott v. Lakeview Regional Med. Ctr., 2001-0538 (La.App. 1 Cir. 3/28/02), 818 So.2d 217, writ denied, 2002-1712 (La.10/4/02), 826 So.2d 1127. Subjective complaints notwithstanding, Horseshoe contends, all experts said she could do a sit-down job; Dr. Acurio’s deposition did not address whether foot pain kept her from working; she tried the mini-bac position for. a mere five hours; the evidence was overwhelming that she had a preexisting foot injury, plus a multitude of other physical conditions; and her psychological condition may have increased her perception of pain, as in Maurer v. Dillard Dept. Stores Inc., 96-1608 (La.App. 1 Cir. 5/9/97), 693 So.2d 1290, writ denied, 97-1494 (La.9/19/97), 701 So.2d 175. It con- *826 eludes Ms. Futeh’s proof did not support the award of SEB.
Ms. Futch responds that her complaints of pain when trying to work the mini-bac table were uncontradicted. She submits that the WCJ’s “thorough and well-reasoned” opinion was not plainly wrong.
The purpose of SEB is to compensate an injured employee for the wage-earning capacity she has lost as a result of her work-related accident. Banks v. Industrial Roofing & Sheet Metal Works, 96-2840 (La.7/1/97), 696 So.2d 551; Patterson v. General Motors Co., 46,559 (La.App. 2 Cir. 9/21/11), 73 So.3d 465. An employee is entitled to receive SEB if she sustains a work-related accident that results in her inability to earn 90% or more of her average pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury resulted in her inability to earn that amount under the facts and circumstances of the individual case. Banks v. Industrial Roofing, supra at 556. In determining if an injured employee has made a prima facie case of entitlement to SEB, the court “may and should take into account all those factors which might bear on an employee’s ability to earn a wage.” Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989). A claimant’s disability is presumed to have resulted from the accident if, before the accident she was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously. manifest themselves afterward, providing that the medical evidence shows a reasonable possibility of causal connection between the accident and the disabling condition. Doucet v. Baker Hughes Prod. Tools, 93-3087 (La.3/11/94), 635 So.2d 166; J.P. Morgan Chase v. Louis, 44,309 (La.App. 2 Cir. 5/13/09), 12 So.3d 440.
Only when the employee makes this initial showing does the burden shift to the employer to prove that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in her or the employer’s community _JjgOr reasonable geographic area. La. R.S. 23:1221(3)(c)(ii). Implicit in R.S. 23:1221(3)’s requirement that the employee show that a work-related injury resulted in her inability to earn 90% of her pre-injury wage is a showing that the injury, and not some other cause, resulted in her inability to retain her pre-injury job. Poissenot v. St. Bernard Parish Sheriffs Ofc., supra.
Finally, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, she cannot perform employment offered, tendered or otherwise proven to be available to her, then the employee is deemed incapable of performing such employment. La. R.S. 23:1221(3)(c)(ii); Pois-senot v. St. Bernard Parish Sheriffs Ofc., supra.
The factual findings of the WCJ are subject to the manifest error standard of appellate review. Dean v. Southmark Const. Co., 2003-1051 (La.7/6/04), 879 So.2d 112. The appellate court does not determine whether the WCJ’s factual findings and credibility calls are right or wrong, but only whether they are reasonable. Buxton v. Iowa Police Dept., 2009-0520 (La.10/20/09), 23 So.3d 275.
Horseshoe stipulated that a work-related accident occurred; by paying Ms. Futch TTD for over two years, it admitted that the accident resulted in a compensa-ble loss. The first issue is whether she proved by a preponderance of the evidence that the work-related accident resulted in *827 her inability, after June 30, 2006, to earn 90% of her pre-injury wage. Horseshoe correctly shows that she had a number of prior injuries to her right foot and a host of other health problems that may well have contributed to her inability to 11swork. However, “the fact that an employee has suffered previous disability, impairment, or disease” does not preclude her from receiving benefits for a subsequent injury. La. R.S. 23:1221(3)(e)(i). Also, the prior foot injuries resulted in brief spans of disability from which she recovered; before the instant injury she was able to work; since then, however, she has undergone four surgeries without resolving the problems. Notably, Dr. Acurio stated in deposition that the accident aggravated her preexisting condition, and Dr. Mead earlier reported a permanent impairment from the multiple surgeries. This satisfied the claimant’s initial burden under R.S. 23:1221(3)(a). Doucet v. Baker Hughes Prod. Tools, supra; J.P. Morgan Chase v. Louis, supra.
The second (and closer) issue is whether Ms. Futch proved by clear and convincing evidence that solely as a consequence of substantial pain, she could not perform the employment offered. Horseshoe correctly shows that the claimant’s self-serving testimony is insufficient to meet this burden, Gilliam v. Manhattan/Whitaker Const. Co., 30,566 (La.App. 2 Cir. 5/13/98), 714 So.2d 101, writ not cons., 98-1845 (La.9/4/98), 723 So.2d 429; Duhon v. Holi Temp. Servs., supra. We are also concerned that Dr. Acurio’s deposition is not a ringing approval of his patient’s complaints. However, his report of June 13, 2006, declared her unable to work as a dealer, and his deposition accepted her account of the pain. The record also shows that her subsequent complaints have been unusually consistent. By contrast, the record does not show that after getting Dr. Acurio’s report, Horseshoe requested another FCE or any other diagnostic to confirm or 114refute her claim of substantial pain. On this record we are constrained to defer to the WCJ’s factual findings and credibility calls. The WCJ did not commit manifest error in finding that Ms. Futch met her burden of proof under La. R.S. 23:1221(3)(c)(ii). This assignment of error lacks merit.

Penalty and Attorney Fee

By its third assignment of error, Horseshoe urges the WCJ erred in awarding a penalty and attorney fee despite the fact that it reasonably controverted Ms. Futch’s claim. The penalty statute, R.S. 23:1201 F, is strictly construed, Williams v. Rush Masonry, 98-2271 (La.6/29/99), 737 So.2d 41, and penalties are not allowed if the employer has “some valid reason or evidence upon which to base his denial of benefits,” Brown v. Texas-La. Cartage Inc., 98-1063 (La.12/1/98), 721 So.2d 885. Horseshoe argues that until June 13, 2006, every expert said Ms. Futch could perform sedentary work, and on that date, only one, Dr. Acurio, changed his view — a change based solely on her subjective complaints; the mini-bac job satisfied the requirements of the FCE; and she had many preexisting injuries. Horseshoe submits that on this evidence, it had a valid reason or evidence to deny benefits.
Ms. Futch responds that in addition to Dr. Acurio’s report, Dr. Mead agreed the mini-bac position “was not appropriate if [she] had to use her injured foot to pivot the chair.” She also contends that Horseshoe relied solely on one offered job and made no other attempts at rehabilitation.
The WCJ treated this claim as a failure to commence benefits under La. R.S. 23:1201 F. The record, however, shows that Horseshoe actually 11ñdiscontinued Ms. Futch’s benefits on June 30, 2006, after she attempted to work the mini-bac *828 table and after Dr. Acurio declared that she could not continue in this position. The penalty claim is therefore based on a finding of termination and regulated by R.S. 23:1201 1:
I. Any employer or insurer who at any time discontinues payment of claims due and arising under the Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.
The award of a penalty and attorney fee under R.S. 23:1201 I is penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Iberia Medical Ctr. v. Ward, 2009-2705 (La.11/30/10), 53 So.3d 421. Although the Workers’ Compensation Act is liberally construed as to benefits, its penal provisions are strictly construed. Id. Arbitrary and capricious behavior consists of “willful and unreasoning action, without consideration and regard for the facts and circumstances presented, or of seemingly unfounded motivation.” Id.; Brown v. Texas-La. Cartage, supra; Henderson v. Graphic Packaging Int’l, 48,491 (La.App. 2 Cir. 11/20/13), 128 So.3d 599.
On close examination we find Horseshoe’s termination of benefits was not arbitrary, capricious or without probable cause. Both of Ms. Futch’s treating physicians — Drs. Aeurio and Hebert — had released her to sedentary work in 2004. Her examining physicians — Drs. Mead and Lillich — also released her to sedentary work, as did the therapist who conducted the FCE. Dr. Acurio’s about-face of June 13, 2006, was without the benefit of any objective findings and thus subject to some skepticism. See, e.g., La. l1fiR.S. 23:1317 A.[9] Perplexingly, at the trial in April 2013, Ms. Futch offered not one word of testimony to corroborate her long complaints of pain or explain why she could not pivot her chair with her left foot. Despite terminating her weekly benefits, Horseshoe never stopped paying her medical claims (with the exception of the psychologist’s fees, which the WCJ disallowed). All told, Horseshoe’s conduct falls far short of being arbitrary and capricious, indifferent to the claimant, or lacking in apparent motivation. This portion of the judgment is reversed.[10]

Conclusion

For the reasons expressed, the judgment is affirmed insofar as it denied Horseshoe’s motion to dismiss and awarded Ms. Futch SEB effective July 1, 2006. It is reversed insofar as it assessed a penalty and attorney fee. Appellate costs are to be paid one-half by Horseshoe Casino and one-half by Shellie Futch.
AFFIRMED IN PART, REVERSED IN PART.
*829 BROWN, C.J., would reverse the trial court in full with written reasons.
STEWART, J., concurs in part and dissents in part with written reasons.
PITMAN, J., concurs in part and dissents in part for the reasons assigned by STEWART, J.

. Ms. Futch's expansive medical record, dating back to 1985, includes a serious injury to her right foot in a car accident in 1985 (resulting in major surgery), reinjury of her right foot in a slip-and-fall at a grocery store in 1998, treatment with Dr. Aeurio for right foot pain through December 2001, and two prior work-related accidents at Horseshoe, in July 2002 and March 2003. Her record also discloses almost continuous medical attention for chronic neck and back pain, psoriasis, arthritis, respiratory and a host of other health problems.

. Another orthopedist, Dr. Clint McAlister, interpreted the FCE as giving Ms. Futch a 20% lower extremity impairment or 8% whole body impairment, and stated that she could not return to her former job because of the standing and walking involved.

. During this time, Ms. Futch changed counsel twice, finally settling on her current lawyer, and Horseshoe changed counsel once.

. Horseshoe filed a notice of intent to apply for a writ from this ruling, but neither the appellate record nor this court's electronic records show that any writ was taken.

. La. Admin. C. Tit. 40, pt. I, § 6103 (Continuance and stays, general), provides in pertinent part: "D. 1. If all parties are represented by counsel and the motion is uncontested, the moving party shall certify to the court that he has spoken to opposing counsel, that no opposition exists and that all witnesses have been timely notified of the continuance. Only one uncontested motion must be granted. A new trial date shall be established by mutual agreement of the parties.” (Emphasis added.)

. Our review of the record has uncovered no motion to continue, in fact no motion of any kind, filed August 8, 2008. We assume that the parties, and the WCJ, are referring to the joint motion to continue filed on August 18, 2008, R.p. 168.

. The cases of Sanders v. Hotel Bentley, 96-1140 (La.App. 3 Cir. 2/19/97), 689 So.2d 711, and Bruce v. Becnel, 98-1349 (La.App.10/13/99), 747 So.2d 647, writ denied, 99-3250 (La. 1/28/00), 753 So.2d 830, address whether filing a separate workers’ comp claim, or a tort claim, would interrupt the five-year period, and have no application to the instant case.

.La. C.C.P. art. 561 provides, in pertinent part: "An action * * * is abandoned when the parties fail to take any step in the prosecution or defense in the trial court for a period of three years[J * * * This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been timely taken in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment.”

. La. R.S. 23:1317 A provides, in pertinent part: "The workers’ compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based on competent evidence and all compensation payments provided for in the Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself.”

. Even if this court were to analyze the claim under R.S. 23:1201 F, for failure to commence payment of benefits, we would find the same evidence discussed herein reasonably controverted Ms. Futch’s claim and negated the penalty.