# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 10-1030

RANDY N. TRAN, ET AL.

VERSUS

CHARLES E. WILLIAMS, III, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20065832
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

Terry L. Rowe
Attorney at Law
P. O. Box 3323
Lafayette, LA 70502
(337) 232-4744
Counsel for Defendant Appellee:
Michael M. Reyes
Charles E. Williams, III
State Farm Mutual AutomobileIns. Co. (as insurer)

**Jeffrey A. Rhoades**
**Swift & Rhoades**
**P. O. Box 53107**
**Lafayette, LA 70502-3107**
**(337) 572-9877**
**Counsel for Defendant/Appellee:**
**United Services Automobile Association**

**Ian Alexander Macdonald**
**Jones Walker**
**P. O. Drawer 3408**
**Lafayette, LA 70502-3408**
**(337) 262-9000**
**Counsel for Defendant/Appellee:**
**Progressive Security Ins. Co.**

**Joseph G. Jevic III**
**St. Martin & Bourque**
**P. O. Box 2017**
**Houma, LA 70361**
**(985) 876-3891**
**Counsel for Plaintiffs/Appellees:**
**Henry V. Vo**
**Thao Mai Vo**
**Randy N. Tran**
**Tiffany T. Vo**
**Hoa T. Truong**

**Timmy Lee Fields**
**Attorney at Law**
**1215 Prytania St., Suite 423**
**New Orleans, LA 70130**
**(504) 596-2257**
**Counsel for Intervenors/Appellants:**
**J. Ronald Denman**
**Shelly R. Sessions**

**Anh Quang Cao Esq.**
**Attorney At Law - Suite 202**
**401 Westbank Expressway**
**Gretna, LA 70053**
**(504) 368-0491**
**Counsel for Plaintiffs/Appellees:**
**Randy N. Tran**
**Tiffany T. Vo**
**Henry V. Vo**
**Thao Mai Vo**
**Hoa T. Truong**

**Dawn L. Morris**
**Law Office of Dawn L. Morris**
**1106 Coolidge Blvd., Suite A**
**Lafayette, LA 70503**
**(337) 704-2094**
**Counsel for Intervenors/Appellants:**
**Shelly R. Sessions**
**J. Ronald Denman**

**Melanie G. Lagarde**
**St. Martin & Bourque**
**P. O. Box 2017**
**Houma, LA 70361**
**(985) 876-3891**
**Counsel for Plaintiffs/Appellees:**
**Thao Mai Vo**
**Henry V. Vo**
**Tiffany T. Vo**
**Hoa T. Truong**
**Randy N. Tran**

**SAUNDERS, Judge.**

This is a case of a discharged attorney filing an intervention seeking attorney's fees earned after the case of the underlying plaintiffs was settled subsequent to her discharge. Over the course of their claim, plaintiffs' first hired the discharged attorney, then an attorney who eventually could no longer handle their case due to his election to an office that disallowed him to retain their case, and, finally, their current attorney.

The plaintiff's current attorney took proceeds equal to the highest percentage of any of the three attorney's contingency fee contracts out of the plaintiffs' settlement totaling approximately $63,000.00 and set that money aside in her firms trust account in anticipation of this intervention's adjudication. After a full hearing on the merits of the intervention, the trial court awarded one of the discharged attorney $1,400.00 in attorney's fees. The trial court reached that amount by using the percentage of the discharged attorney's contingency fee agreement multiplied by the amount of monies received from the med-pay provision of her former clients' own insurance policy. These monies were obtained for plaintiffs by the discharged attorney prior to her dismissal. Even though the trial court found that the discharged attorney was dismissed for cause, it did not reduce the amount of attorney's fees it awarded to her.

The discharged attorney has appealed. We affirm.

**FACTS AND PROCEDURAL HISTORY:**

On July 5, 2006, Randy N. Tran and Tiffany T. Vo individually, and on behalf of their minor children, David Tran and Kristin Tran, together with Thao Mai Vo, Henry V. Vo, and Hoa T. Truong (collectively "plaintiffs") were in an automobile accident. On July 6, 2006, plaintiffs hired attorneys Shelly Sessions and Ronald

Denman (collectively "Sessions" as Sessions was the attorney who performed the work on plaintiffs' behalf) via a contingency fee agreement to represent them in pursuit of their personal injury claims.

Plaintiffs notified Sessions that they no longer wanted her to represent them on November 3, 2006. Sessions then filed suit on plaintiffs' behalf on November 8, 2006.[1] Plaintiffs then hired Anh Quang Cao (Cao) as attorney representation. Cao enrolled as counsel of record on November 30, 2006. Cao reimbursed Sessions for the expenses she had incurred in representing plaintiffs, inclusive of the costs of filing a petition for intervention on December 7, 2006. Sessions' intervention sought attorney's fees and is the subject of this appeal.

Cao was subsequently elected to the United States House of Representatives (the House) on December 6, 2008, and was sworn in on January 6, 2009. As a member of the House, Cao had to cease representing plaintiffs as he could no longer privately practice law for profit. Cao then arranged for plaintiffs to employ Melanie Lagarde (Lagarde) as their attorney. On March 9, 2009, Lagarde filed a motion to enroll as counsel of record. On March 16, 2009, Lagarde was orally enrolled as counsel for plaintiffs.

Lagarde negotiated a settlement on behalf of plaintiffs in July of 2009. On July 28, 2009, Lagarde filed a motion to approve settlement. This motion was granted, over opposition of Sessions, and a judgment was signed by the trial court on September 21, 2009. At that time, all monies owed to plaintiffs were dispersed, all medical and insurance liens were paid, and a forty-five percent (45%) attorneys' fee was placed in the trust account of Lagarde's firm pursuant to the court order

---

[1] Sessions testified that she thought she mailed the petition prior to receiving a fax from Cao on November 3, 2006, but that the petition was not filed by the Lafayette clerk until November 8, 2006.

approving the settlement.

On February 1, 2010, a full hearing was conducted on the merits of Sessions' intervention. After the hearing in which Sessions, Cao, and Legarde testified regarding the work each performed in representing plaintiffs, the trial court awarded Sessions $1,400.00 in attorney's fees. Sessions appeals, alleging the following assignments of error:

**ASSIGNMENTS OF ERROR:**

1.      The trial court committed legal error in failing to require joinder of all parties needed for just adjudication and, as a result, the judgment is null and void and the matter should be remanded for joinder of all necessary parties and a trial on the issue of attorneys' fees.

2.      Alternatively, the trial court committed legal error in failing to apply the proper standards for determining (a) whether Sessions was discharged with or without cause and (b) for determining the proper allocation of attorneys' fees between all of plaintiffs' attorneys.

3.      The trial court also abused its discretion in sanctioning intervenors for alleged discovery deficiencies.

**ASSIGNMENT OF ERROR NUMBER ONE:**

Sessions alleges in her first assignment of error that the trial court committed legal error in failing to require joinder of all parties needed for just adjudication (specifically, Cao) and, as a result, the judgment is null and void and the matter should be remanded for joinder of all necessary parties and a trial on the issue of attorneys' fees. We find this assignment lacking of merit.

Our review of the record indicates that Sessions did not file an exception on this issue nor did she bring this issue before the trial court. Thus, the trial court has not ruled upon this point.

Our supreme court was faced with an analogous situation in *Prince v. Standard Oil Co. of Louisiana*, 84 So. 657 (La.1920). In that case, the court stated:

3

It is argued in this court that to annul a lease all the owners must be joined as plaintiffs, and, as Giddens and the Natalie Oil Company do not appear as plaintiffs, that the suit must fail. But no exception was filed in the district court to the right of plaintiffs to sue for the annulment of the lease, and no such defense was set up in the answer. The point was not raised or passed upon in the trial court, and it cannot therefore be heard or considered in this court.

*Id.* at 658.

Given this directive, this court cannot hear this issue solely because it is now raised by Sessions. This directive is consistent with the statutory scheme set up in dealing the situation before us. Louisiana Code of Civil Procedure Article 645 states "[t]he failure to join a party to an action may be pleaded in the peremptory exception, of may be noticed by the trial or appellate court on its own motion." The time for pleading peremptory exceptions is governed by La.Code Civ.P. art. 928(B), which states "[t]he peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision."

In the case before us, Sessions assigns this issue as error. Given the above, because the case was submitted for a decision, she has waived this exception. However, as noted by La.Code Civ.P. art. 645, this court can notice the failure to join a party on its own motion. We decline to do so.

Louisiana Code of Civil Procedure Article 641 states:

A person shall be joined as a party in the action when either:

(1) In his absence complete relief cannot be accorded among those already parties.

(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:

(a) As a practical matter, impair or impede his ability to protect that interest.

4

(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

Our review of the record indicates that a full hearing on the merits of this intervention took place. The party that allegedly was necessary for a just adjudication was Congressman Cao. At the hearing, Congressman Cao voluntarily testified before the trial court via deposition. In that deposition, he extensively relayed what legal work he performed on the underlying claim for personal injuries. Thus, his interests in the matter were clearly protected, as the trial court was fully aware what work Cao performed in representing plaintiffs.

Sessions argues in brief that the supreme court case of *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 (La.1979) mandates this court to find that Congressman Cao be added as a party to the proceedings. While we need not address this argument, we choose to do so. *Saucier* is distinguishable from the case before us. In *Saucier*, the court did not have any record of the second attorney's services performed for the client. Here, we have Congressman Cao's deposition where he testified extensively to "the amount and character of his services." *Id.* at 119. Further, the non-joinder of Cao does not hurt his interests pursuant to La.Code Civ.P. art. 641. Thus, Sessions' argument is without merit.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In her second assignment of error, Sessions argues that the trial court committed legal error in failing to apply the proper standards for determining (a) whether Sessions was discharged with or without cause and (b) for determining the proper allocation of attorneys' fees between all of plaintiffs' attorneys. Again, we find no merit to these arguments.

5

In the first part of this assignment of error, Sessions argues that the trial court's finding that she was dismissed for cause was manifestly erroneous. We do not agree.

A determination of whether termination was with cause is factual and will be disturbed on appeal only upon manifest error. *O'Rourke v. Cairns*, 95-3054 (La. 11/25/96), 683 So.2d 697.

> In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Thus, if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Gradney v. La. Commercial Laundry*, 09-1465, pp. 2-3 (La.App. 3 Cir. 5/12/10), 38 So.3d 1115, 1118 (citations omitted)(internal quotation marks omitted).

Congressman Cao testified as to why plaintiffs discharged Sessions. In his testimony, the following exchange took place (emphasis added):

Q   Do you remember stating [in the answer to petition for intervention] that [Sessions' discharge] was for cause?

A   Oh, I believe so. I believe so. But I cannot remember exactly what the words that I used.

Q   Okay. But do you recall what the Tran family told you their disappointment was with Mr. Denman and Miss Sessions?

A   There were very disappointed that they made repeated phone calls to the office, and they were frustrated with I guess communication or lack of communications.

A couple of the plaintiffs, they did not speak English very well[,] especially the older - - the parents of Mr. Tran, and they had a hard time communicating. So that was a frustration for them.

> But overall I believe *they were simply disappointed in the fact that once they were retained, there was very little communication. They tried to contact them on a number of occasions, and they were never returned.* So those were - - I think those were the primary reasons.

This testimony supports the trial court's finding of fact that Sessions deficiently communicated with plaintiffs and was terminated for cause. Our supreme court, in *O'Rourke*, 683 So.2d 697, determined that lack of communication between attorney and client was a basis for finding that an attorney was discharged for cause. Thus, the trial court's determination that Sessions was discharged for cause is also reasonable. Accordingly, we find that this issue raised by Sessions lacks credence.

Next, Sessions argues that the trial court did not use the proper method in determining how to allocate the attorney's fees between plaintiffs' attorneys. We disagree.

This argument posits a question of law as to whether the trial court was proper in following our supreme court's guidance provided in *Saucier*, 373 So.2d 102, and in *O'Rourke*, 683 So.2d 697. When an error of law is alleged, the applicable standard of review is that of de novo. *Sanchez v. La. Nursery*, 09-1247 (La.App. 3 Cir. 4/7/10), 34 So.3d 1047. As such, this court will determine whether the trial court was legally correct in its method of allocation of attorney's fees.

In *Saucier*, our supreme court provided the framework for how lower courts are to allocate earned attorney's fees from clients who, over the course of the claim, hired and/or discharged multiple attorneys under contingency fee contracts. Our supreme court, in *O'Rourke*, 683 So.2d at 704, explained how to apply that framework, stating:

> [I]n cases of discharge with cause of an attorney retained on

7

contingency, the trial court should determine the amount of the fee according to the *Saucier* rule, calculating the highest ethical contingency to which the client contractually agreed in any of the contingency fee contracts executed. The court should then allocate the fee between or among discharged and subsequent counsel based upon the *Saucier* factors. Thereafter, the court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel otherwise would receive after the *Saucier* allocation.

In directing a lower court how to determine the appropriate division of attorney's fees, our supreme court, in *Scott v. Kemper Insurance Co.*, 377 So.2d 66, 71 (La.1979), n.6, cited factors from the former Code of Professional Responsibility DR2-106. Currently, the factors governing fees for legal services are located in La.Rules Prof.Conduct, Rule 1.5(a), which follows:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

In the case before us, the trial court heard testimony from each of the three attorneys who represented plaintiffs over the course of the litigation. Each attorney's testimony included assertions regarding the contracted upon attorney's fees. The trial

8

court determined that Sessions had contracted for the highest percentage of contingency fee or forty-five percent (45%). Sessions asserts in brief that the trial court erroneously did not determine whether that fee was proper under the Code of Professional Responsibility. We find this assertion curious, given that it was Sessions who contracted for that percentage of attorney's fees. Regardless, it is clear that the trial court found that fee to be reasonable as it used that percentage in its calculations of the total attorney's fees earned. Moreover, no party asserted that the fee percentage was unreasonable. Thus, we find that the trial court correctly completed the first step in allocation under *Saucier* and its progeny.

The trial court then awarded Sessions the full contingency fee of forty-five percent (45%) of the monies she collected while representing plaintiffs. It is true that the trial court did not annunciate the *Saucier* factors it used in reaching it determination. However, the information for an analysis for each of the factors listed was readily available to the trial court, as all of the testimony heard by the trial court on this matter dealt nearly exclusively with how each of plaintiffs' three attorneys helped plaintiffs reach a resolution in their claim for damages.

Additionally, in *Saucier*, 373 So.2d at 118, the court stated (emphasis added) (footnote omitted):

> The amount prescribed in the contingency fee contract, not quantum meruit, is the proper frame of reference for fixing compensation for the attorney prematurely discharged without cause. *We choose to vindicate the contingency fee contract rather than render it nugatory*. In this way the client is prevented from reaping any possible unfair advantage resulting from the discharge of his attorney. Similarly by this resolution the client is not exposed to the risk of being penalized by being required to pay excessive and duplicitous legal fees for having chosen to exercise his right to discharge one attorney and retain the services of another.

In awarding Sessions her fee, the trial court vindicated "the contengency fee

9

contract rather than render[ed] it nugatory," as it awarded her the contracted upon forty-five percent (45%) of all monies she had collected while representing plaintiffs. We recognize that an allocation based on a bright-line rule that the attorney will receive his or her contracted fee percentage of whatever monies earned while representing a client will not hold in all circumstances, nor is that what *Saucier* directs. However, here, that allocation by the trial court did not run afoul of our supreme court's motivation in deciding *Saucier*. Plaintiffs did not attempt at the last minute "to supplant his original attorney with another or to proceed in proper person so as to obviate responsibility for payment of a contingent fee after substantially all of the legal services contemplated by the contract have been performed and settlement or judgment has been obtained or is imminent." *Id.*, n. 8. Likewise, the result in this case does not expose plaintiffs "to the risk of being penalized by being required to pay excessive and duplicitous legal fees for having chosen to exercise his right to discharge one attorney and retain the services of another." *Saucier*, 373 So.2d at 118.

Finally, we note that Sessions was discharged for cause. However, the trial court chose not to reduce its allocation to Sessions as it was free to do under the proper method of calculation as stated in *O'Rourke*.

Therefore, given the analysis above, we cannot say that the trial court's method of allocation was erroneous. As such, this assignment of error lacks merit.

**ASSIGNMENT OF ERROR NUMBER THREE:**

In her final assignment of error, Sessions asserts that the trial court abused its discretion in sanctioning intervenors for alleged discovery deficiencies. In arguing this assignment, Sessional alleges that the trial court did not allow her to enter into evidence the time and effort expended by her while representing plaintiffs. We

10

disagree.

"The standard of review used by this court in reviewing evidentiary rulings of a trial court is abuse of discretion." *Johnson v. First Nat'l Bank of Shreveport*, 00-870, p. 32 (La.App. 3 Cir. 6/20/01), 792 So.2d. 33, 56, *writ denied*, (La. 1/4/02), 805 So.2d 212, *writ denied*, (La. 1/4/02), 805 So.2d 213.

The record includes formal discovery propounded to Sessions requesting "a copy of any and all documents supporting" her response to an interrogatory regarding "the exact number of hours you claim you spent working on this case prior to being fired." No response to that discovery is in the record. Additionally, according to opposing counsel Lagarde, she had to file a motion to compel in order to receive a response to that discovery, and Sessions' response to that discovery was that no such document existed. These statements by Lagarde provide a basis for the trial court to find that it was Sessions' failure to create and/or timely produce that document that prevented it from being entered into the record.

Further, our review of the record indicates that Sessions testified extensively regarding the time and effort she exerted in this case. While the trial court did not allow Sessions to enter into evidence a document she created in preparation for trial detailing exactly how many hours she worked on the case, Sessions was allowed to testify at length, and with incredible detail, of what work she performed for plaintiffs. Accordingly, we cannot say that the trial court's exclusion of a written summary of Sessions' hours worked prejudiced her in any manner. Therefore, like the two assignments before, we find no merit to this assignment of error.

**CONCLUSION:**

Sessions raises three assignments of error. We find no error by the trial court.

All costs of this appeal are taxed to Sessions.

**AFFIRMED.**