# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-503

CHELSEA JACKSON

VERSUS

ARAMARK HEALTHCARE SERVICES

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 14-07957
ANTHONY PALERMO, WORKERS' COMPENSATION JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Candyce G. Perret, Judges.

## REVERSED IN PART; AFFIRMED IN PART; AND RENDERED

**Michael B. Miller**
**Jacqueline K. Becker**
**Attorneys at Law**
**P. O. Drawer 1630**
**Crowley, LA 70527-1630**
**(337) 785-9500**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Chelsea Jackson**

**John J. Rabalais**
**Matthew D. Crumhorn**
**Rabalais Unland**
**1404 Greengate Drive, Ste. 110**
**Covington, LA 70433**
**(504) 893-9900**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Aramark Healthcare Services**

**SAUNDERS, Judge.**

In this case, we must decide whether the Employee's disputed claim for the rate of workers' compensation benefits paid was incorrect. We must also decide whether Employer improperly suspended Employee's medical and indemnity benefits, and if so, whether Employee is entitled to penalties, attorney fees, and legal interest.

Employee alleges that she suffered injuries to her head, neck, right shoulder, right arm and hand, and back as the result of a work-related accident. Following the accident, Employer initially paid Employee indemnity and medical benefits. However, Employee's medical benefits were suspended when she refused to submit to a neuropsychological evaluation. Likewise, Employee's indemnity benefits were suspended when an independent medical examiner's report indicated that Employee had reached maximum medical improvement and Employee was able to return to work. As a result, Employee filed a disputed claim form, seeking medical and indemnity benefits, penalties, attorney fees, expenses, and legal interest. Following a hearing, the workers' compensation judge found in Employer's favor.

Employee now appeals the workers' compensation judge's ruling. Her argument is that the workers' compensation judge erred in failing to rule as to the proper amount of weekly wage and workers' compensation rate, and in failing to award penalties, attorney fees, expenses, and legal interest for the alleged improper suspension of her medical and indemnity benefits.

**FACTS AND PROCEDURAL HISTORY:**

Chelsea Jackson ("Employee") was injured in the course of scope of her employment with Aramark Healthcare Services ("Employer") when she fell down a small flight of steps, hit her head on the wall, and fell on her right side. At the

time of her work accident, Employee was employed as a full-time pod server and runner. Her job duties included fixing orders and delivering food to patients' rooms. Employee worked six days a week, occasionally worked overtime, and due to a recent promotion and pay raise was allegedly earning $10.00 per hour.

Prior to her work accident, Employee allegedly had no physical problems performing her job duties and did not miss any time from work for any physical injury or pain. However, Employee suffered from numerous pre-existing conditions, including a low back injury in 2005, which caused her to quit her job in 2006, a subsequent motor vehicle accident in which Employee suffered from "whiplash" to her neck and back, and a light stroke in 2008. In addition, Employee has a history of a heart murmur, bipolar disorder, and depression.

Following her work accident, Employee received indemnity benefits, albeit allegedly at an incorrect rate, as Employer allegedly failed to factor in Employee's recent promotion and pay raise and occasional overtime hours in calculating her average weekly wage to determine her compensation rate. In addition, Employee's medical benefits were suspended in November 2014, when she refused to submit to a neuropsychological examination. In response, Employee filed multiple motions, seeking authorization for a one-time evaluation with an orthopedic surgeon of her choice, and an order lifting the suspension of her medical benefits. Ultimately, Employee's request was granted, and the medical suspension was lifted. At that time, Employee was also ordered to attend a neuropsychological evaluation, which she did. Next, at Employer's request, Employee presented to a second orthopedic surgeon for a second medical opinion in response to that of Employee's chosen orthopedic surgeon. Finally, Employer requested the appointment of an independent medical examiner to provide a third, independent medical opinion as to the nature and extent of Employee's injuries.

2

Employee's indemnity benefits were suspended when the independent medical examiner's report indicated that Employee had reached maximum medical improvement and was able to return to work. At that time, Employee filed suit. Consequently, Employer filed an exception of prematurity and answer, alleging that Employee's suit was premature, that she was not disabled as a result of her work accident, and that Employee's medical and indemnity benefits were properly suspended.

After oral arguments, the workers' compensation judge rendered judgment finding that some, but not all, of Employee's injuries were causally related to her work accident; that Employee was not disabled as of February 1, 2016; that Employee is not entitled to payment of non-emergency care for which pre-approval was not obtained; and that Employee is not entitled to penalties and attorney fees. Employee timely filed a motion for devolutive appeal. Pursuant to that motion, Employee is presently before this court alleging six assignments of error.

**ASSIGNMENTS OF ERROR:**

1. The workers' compensation judge legally erred in failing to rule as to the proper amount of Ms. Jackson's average weekly wage and worker's compensation rate when this amount was an issue in dispute.

2. The workers' compensation judge legally erred in failing to award any indemnity benefits when Chelsea Jackson had a compensable work accident and was disabled after her accident.

3. The workers' compensation judge erred in finding that Ms. Jackson's right arm and low back complaints are not casually related to her work accident of May 5, 2014, and in not addressing her right shoulder and hand injury.

4. The worker's compensation judge erred in allowing into evidence and in relying upon the IME report of John Budden, M.D., which did not comply with the mandatory requirements of La.R.S. 23:1317.1 and lacks reliability and trustworthiness.

5. The workers' compensation judge erred in failing to award any penalties, attorneys fees, and expenses.

6. The workers' compensation judge legally erred in failing to award legal interest on all amounts owed.

## ASSIGNMENT OF ERROR NUMBER ONE:

In her first assignment of error, Employee contends that the workers' compensation judge legally erred in failing to rule as to the proper amount of her average weekly wage and workers' compensation rate when this amount was an issue in dispute. We find merit to this contention.

When an issue raised on appeal posits a question of law, the standard of review is de novo wherein the appellate court determines whether the lower court was legally correct. *Tran v. Williams*, 10-1030 (La.App. 3 Cir. 2/9/11), 56 So.3d 1224.

Louisiana Revised Statutes 23:1221 provides, in pertinent part, as follows:

Compensation shall be paid under this Chapter in accordance with the following schedule of payments:

**(1) Temporary total.**

(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.

Louisiana Revised Statutes 23:1021(13)(a)(i) provides as follows:

(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater.

In *Driscoll v. Stucker*, 04-0589, pp. 18-19 (La. 1/19/05), 893 So.2d 32 (citations omitted), our supreme court noted:

4

An adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify, even though the presumption is rebuttable and is tempered by the fact that a party need only put on enough evidence to prove the case. Explaining that adverse presumption, the Fourth Circuit recently noted "'[w]hen a defendant in a civil case can by his own testimony throw light upon matters at issue, necessary to his defense and particularly within his own knowledge, and fails to go upon the witness stand, the presumption is raised and will be given effect, that the facts, as he would have them do not exist.'" This adverse presumption is referred to as the "uncalled witness" rule and applies "when 'a party has the power to produce witnesses whose testimony would elucidate the transaction or occurrence' and fails to call such witnesses." Despite the advent of modern, liberal discovery rules, this rule remains vital, especially in cases, such as this one, in which a witness with peculiar knowledge of the material facts is not called to testify at trial.

Employee subpoenaed Employer to testify concerning the hours she worked and her rate of pay during the requisite time. Inasmuch as Employer failed to produce any witness, and the testimony of Employee that she received an increase to $10.00 per hour, we hold that Employee was a full-time, hourly employee earning $10.00 per hour, plus overtime. Therefore, pursuant to statute, her compensation is determined by taking sixty-six and two thirds percent (66 2/3%) of her average weekly wage from the average actual hours worked in the four full weeks preceding the accident, or forty hours, whichever is greater. Accordingly, we use the following computation to determine her compensation rate:

1. April 5, 2014 to April 11, 2014 = 40 regular hours; 3.12 overtime

2. April 12, 2014 to April 18, 2014 and
   April 19, 2014 to April 25, 2014 = 80 regular hours; 2.28 overtime

3. April 26, 2014 to May 2, 2014 = 40 regular hours; 1.42 overtime

Using these figures, Employee's average weekly wage is calculated as follows:

Total regular hours/four full weeks = 160 ÷ 4 = 40 hours per week

Regular pay: 40 hours × $10.00 = $400.00

Total overtime hours/four full weeks = 6.82 ÷ 4 = 1.72 hours per week

Overtime pay: 1.72 hours × $15.00 = $25.65

$400.00 + $25.65 = $425.65 average weekly wage

$425.65 × 66 2/3% = $283.77 workers' compensation rate

We note that the final judgment fails to address the issue of La.R.S. 23:1021(13)(a)(i) calculation of Employee's weekly compensation rate, although Employee's attorney indicated that it was an issue for trial. This court held in *Danzey v. Evergreen Presbyterian Ministries*, 95-167 (La.App. 3 Cir. 6/7/95), 657 So.2d 491, that a written judgment silent as to an issue was to be construed as a rejection of the relief requested on that issue. The workers' compensation judge's failure to address the issue of the Employee's correct compensation rate in the final written judgment is, therefore, considered a denial of Employee's request for the difference in what she should have been paid versus what she was paid. The record supports a finding, however, that Employer failed to properly calculate Employee's average weekly wage and to properly pay Employee's workers' compensation rate. Accordingly, we reverse the Office of Workers' Compensation judgment on this issue, as Employee's workers' compensation rate is $283.77 per week.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In her second assignment of error, Employee contends that the workers' compensation judge committed legal error in failing to award any indemnity benefits when Employee had a compensable work accident and was disabled after her accident. We find no merit to this contention.

When an issue raised on appeal posits a question of law, the standard of review is de novo wherein the appellate court determines whether the lower court was legally correct. *Tran v. Williams*, 10-1030 (La.App. 3 Cir. 2/9/11), 56 So.3d 1224.

6

There is a legal presumption that Employee's disability was caused by the accident. This court in *Ware v. Allen Par. Sch. Bd.*, 01-1011, p.3 (La.App. 3 Cir. 5/21/03), 854 So.2d 374, 378, citing *Walton v. Normandy Village Homes Assoc., Inc.*, 475 So.2d 320 (La.1985), held:

> An injured worker's disability is presumed to have resulted from an accident, if before the accident he was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a causal connection between the accident and disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection.

In *Richardson v. Lil' River Harvesting*, 09-1090, p. 2 (La.App. 3 Cir. 3/10/10), 33 So.3d 418, 419 this court held:

> An IME's medical conclusions should be given significant weight because the IME is an objective party. *Scott v. Wal-Mart Stores, Inc.*, 03-858 (La.App. 1 Cir. 2/23/04), 873 So.2d 664; see also La. R.S. 23:1123. However, the opinion of the IME is not conclusive, and the workers' compensation judge must evaluate all of the evidence presented in making a decision as to a claimant's medical condition. *Mosley v. Pennzoil Quaker State*, 37,199 (La.App. 2 Cir. 7/23/03), 850 So.2d 1100[, *writ denied*, 03-2412 (La.11/21/03), 860 So.2d 553].

In *Richardson*, this court further held that "as a general rule, while the trier of fact is required to weigh the testimony of all medical witnesses, the testimony of a treating physician should be accorded greater weight than that of a physician who examines a patient only once or twice." *Richardson*, 33 So.3d at 419-420.

Pursuant to the judgment signed November 9, 2016, the workers' compensation judge found that the suspension of Employee's indemnity benefits, based upon the independent medical examiner's report indicating that Employee had reached maximum medical improvement and was able to return to work, was proper.

Prior to Employee's work accident, Employee worked for Employer for several years, in different capacities, first as a seasonal employee serving customers at the Minute Maid park in Houston during baseball season, and later, doing home health work, and at no time did she ever have problems physically performing her job duties. During her last tenure with Employer – the period in which she was injured - Employee worked as a pod server and runner at Lafayette General Medical Center, where her job duties included pushing and/or pulling four foot and six foot carts filled with food trays to deliver them to patients' rooms. Her work was fast-paced, and she did a lot of standing, bending, and walking. However, Employee suffered from numerous pre-existing conditions, including a lower back injury in 2005, which caused her to quit her job in 2006, a subsequent motor vehicle accident in which Employee suffered from "whiplash" to her neck and back, and a light stroke in 2008. In addition, Employee has a history of a heart murmur, bipolar disorder, and depression.

David W. McManus, M.D.

On May 5, 2014, immediately after her work accident, Employee was admitted to Lafayette General Medical Center by Elizabeth Watson, M.D. During her three-day hospital stay, Employee was seen by neurologist, David W. McManus, M.D. ("Dr. McManus"), to whom she reported injuries to her neck and shoulder. Employee was discharged with a diagnosis of post-concussion syndrome, in combination with an underlying psychiatric disorder. Upon discharge, Employee was advised to follow-up with a neurologist of her choice, and psychiatrist Scott Mayers. Thereafter, Employee was seen by several health care professionals over the course of the next two years, where she complained of a multitude of symptoms. Employee has not worked or earned any wages since the date of her accident.

Wael Alabulkarim, M.D. (Neurologist)

On June 2, 2014, Employee presented to 21, 2014, Wael Alabulkarim ("Dr. Karim") for treatment, with added complaints of confusion, dizziness, and an inability to walk since the accident. She also complained of bruising on both thighs, pain in her shoulders and low back, vision difficulty, and headaches. Dr. Karim diagnosed Employee with a concussion, chronic headaches, neck pain, right arm pain and numbness, insomnia, dizziness, and short-term memory loss. He prescribed Topamax 25 mg., and Mobic at that time, and recommended an electroencephalogram ("EEG"). Dr. Karim also made a notation to consider an electromyography ("EMG") and a Nerve Conduction Study ("NCS") for her alleged right arm pain, and a neuropsychiatric evaluation. The EEG was abnormal due to the presence of two episodes of intermittent slowing, which is a non-specific sign, but can be found in intericatal event. Next, Dr. Karim recommended a magnetic resonance image ("MRI") of the cervical spine, which was performed at Laborde Diagnostics. That test result was negative for herniations, protrusions or disc bulges, with the exception of a minimal central tissue disc bulge at C3-4. Employee continued to treat with Dr. Karim until May 12, 2015.

James N. Domingue, M.D. (Neurologist)

On October 21, 2014, Employee presented to James N. Domingue, M.D. ("Dr. Domingue") with complaints of headaches that involve the entire head, often accompanied by dizziness, as well as pain in her low back, neck, and upper right extremity. After examining Employee and reviewing her medical records, Dr. Domingue opined that it is likely that Employee has right shoulder pathology and recommended that she consult with an orthopedic surgeon for further evaluation. Dr. Domingue further opined that his neurological examination contained so many inconsistencies and suggestions of exaggeration that it was difficult to discern

which of Employee's responses were real, and, as such, recommended a neuropsychological battery examination on November 18, 2014, with neuropsychologist, Dr. Lynn Aurich; however, Employee refused to attend. As a result, Employer suspended Employee's medical benefits. At that time, Employee filed motions seeking authorization to treat with an orthopedic surgeon of her choice. The motions were set for hearing on January 13, 2015, at which time Employee was awarded a one-time evaluation with John Sledge, III, M.D. In addition, Employee was compelled to attend a neuropsychiatric evaluation, and Employer was compelled to lift the suspension of Employee's medical benefits.

Angela Traylor, M.D. (Psychiatrist)

On February 7, 2015, Employee presented to psychiatrist Angela Traylor ("Dr. Traylor") with complaints of "mood instability". Dr. Traylor concluded that Employee suffered from bipolar disorder/manic depression, and Ambien was prescribed. On March 28, 2015, Employee presented for a follow-up, with related symptoms, at which time Employee was prescribed Ambien 5MG, at bedtime.

John B. Sledge, III, M.D. (Orthopedic Surgeon)

On February 25, 2015, Employee presented to John B. Sledge, III, M.D. ("Dr. Sledge") with complaints of neck and right shoulder pain. At that time, Employee reported to Dr. Sledge that following her accident she did not return to work. In his reports dated February 25, 2015, April 8, 2015, and October 7, 2015, as well as in his correspondence dated November 11, 2015, Dr. Sledge noted that Employee is unable to work pending treatment. In his deposition taken on January 8, 2016, Dr. Sledge testified that without having a Functional Capacity Evaluation ("FCE"), any release of Employee would be light-duty, and would be on a trial basis. In that correspondence, Dr. Sledge also noted that he would want to see a job description of any jobs offered to review prior to his approval of Employee to

10

do the job. Dr. Sledge also indicated that he would have restrictions from overhead activities, limiting bending, twisting, rotational activities, and that Employee would need to be able to sit or stand as well. No functional capacity evaluation ("FCE") was ever performed, no job or vocational rehabilitation was ever offered to Employee in accordance with the restrictions of Dr. Sledge, and Dr. Sledge never approved Employee for any jobs.

Douglas A. Bernard, M.D. (Orthopedic Surgeon – Second Opinion)

On April 1, 2015, Employee presented to Douglas A. Bernard, M.D., ("Dr. Bernard"), for a second opinion as requested by Employer. Overall Dr. Bernard diagnosed Employee with a contusion to the head. Dr. Bernard also opined that Employee had reached maximum medical improvement. Dr. Bernard further opined that Employee had mental issues that needed to be evaluated, and recommended that she undergo a thorough neuropsychiatric evaluation. Furthermore, Dr. Bernard agreed with Dr. Domingue, that there were obvious signs of exaggeration and symptom magnification with regards to Employee's complaints of right arm/shoulder, neck, and lower back pain.

John Budden, M.D. – Independent Medical Examiner

On August 26, 2015, Employee presented to John R. Budden, M.D. ("Dr. Budden") for a court ordered independent medical examination ("IME"). Dr. Budden issued a report stating that Employee had reached maximum medical improvement and was able to return to work. Dr. Budden later testified that there was no indication of any diagnostic testing or treatment needed, and he alluded to Employee's pre-existing psychological condition(s) as an explanation for Employee's ongoing complaints of pain.

In the instant case, our review of the record reveals that at the time of trial, Employee had been in the workers' compensation system for nearly two years, and

11

according to her testimony, which was contrary to the objective medical findings, she remained unable to return to work due to her injuries. During the course of her treatment, both Dr. Karim and Dr. Sledge had taken Employee off of work. And although Dr. Domingue opined that Employee should not work pending the results of a neuropsychological evaluation, he also opined that it was hard to determine whether Employee was exaggerating her symptoms. Contrary to those medical opinions, Dr. Bernard and Dr. Budden found that Employee was able to work. Significantly, Dr. Domingue, Dr. Bernard, Dr. Traylor, and Dr. Budden all concluded that Employee had an underlying psychiatric disorder. Moreover, Dr. Bernard and Dr. Budden concluded that Employee's alleged inability to work was likely due to her pre-existing psychological condition, and not her physical injuries. Applying the legal presumption and giving greater weight to Employee's treating physicians over the IME physician, any disability Employee might have had was likely due to her pre-existing psychological condition, and not her physical injuries. Accordingly, the workers' compensation judge did not err in failing to award indemnity benefits, as Employee's indemnity benefits were properly terminated when the IME report indicated that she had reached maximum medical improvement and was able to return to work, the Employee failed to prove that she is disabled due to her work-related injuries, and the objective medical findings confirmed the same.

**ASSIGNMENT OF ERROR NUMBER THREE:**

In her third assignment of error, Employee contends that the workers' compensation judge erred in concluding that her right arm and low back complaints are not causally related to her work accident, and in not addressing her right shoulder and hand injury. We find no merit to this contention.

When reviewing a WCJ's findings of fact, appellate courts do not review the findings of fact to determine whether they are right or wrong but whether they are reasonable based on the record. *Dean v. Southmark Constr.*, 03-1051 (La. 7/6/04), 879 So.2d 112. Unless the WCJ's findings of fact are found to be manifestly erroneous or clearly wrong, those findings will not be set aside. *Id.* A factfinder's choice can virtually never be wrong if the evidence presents two reasonable views of the facts. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

In *Rosell*, 549 So.2d at 844-45 (citations omitted), our supreme court stated:

> When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

At the time of trial, Employee continued to allege a total disability as a result of multiple injuries sustained in her work accident. For a claimant to prove that she is entitled to benefits of any kind, solely because of pain, her burden is raised to clear and convincing. *Futch v. Horseshoe Casino*, 49,144, p.10 (La.App. 2 Cir. 7/23/14), 146 So.3d 818, *writ denied,* 14-1934 (La. 11/21/14), 160 So.3d 973. He/She cannot sustain that burden of proof if evidence casts doubt and discredits his/her version of events. *Bruno v. Harbert Int'l Inc.,* 593 So.2d 357.

In the instant case, our review of the record reveals that prior to Employee's work accident, Employee suffered from numerous pre-existing conditions, including a low back injury in 2005, which caused her to quit her job in 2006, a

13

subsequent motor vehicle accident in which Employee suffered from "whiplash" to her neck and back, and a light stroke in 2008. In addition, Employee has a history of a heart murmur, bipolar disorder, and depression. Furthermore, Employee testified at trial that she has racing thoughts, symptoms of paranoia, and auditory and visual hallucinations. A neuropsychological evaluation of Employee noted emotional factors or symptom malingering. Most importantly, however, the objective medical findings and testimony corroborated Dr. Bernard's second medical opinion, as well as Dr. Budden's IME opinion, that Employee's symptoms and alleged inability to work were likely due to her pre-existing psychological condition, and not her physical injuries. Accordingly, the workers' compensation judge did not err in finding that Employee's right arm and low back complaints are not causally related to her work accident, and in not addressing her right shoulder and hand injury, as Employee had a multitude of pre-existing injuries, was deemed not to be credible at trial, and her allegations of total disability are contrary to the objective medical findings.

## ASSIGNMENT OF ERROR NUMBER FOUR:

In her fourth assignment of error, Employee contends that the workers' compensation judge erred in allowing into evidence and relying upon the IME report of Dr. Budden which did not comply with the mandatory requirements of La.R.S. 23:1317.1, and lacks reliability and trustworthiness. We find no merit to this contention.

A trial court has broad discretion in handling discovery matters and an appellate court should not upset a ruling absent an abuse of discretion. *Arterburn v. Arterburn*, 15-22 (La.App. 3 Cir. 10/7/15), 176 So.3d 1163, 1176, *writ not considered*, 15-2064 (La. 1/8/16), 184 So.3d 689.

Louisiana Code of Evidence Article 402 provides "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation." Louisiana Code of Evidence Article 401 defines "Relevant Evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Louisiana Code of Evidence Article 403 provides "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time." Moreover, "[a] trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect." *State v. Henry*, 11-1137, p. 9 (La.App. 4 Cir. 10/23/12), 102 So.3d 1016, 1022 *writ denied,* 12-2520 (La. 4/26/13), 112 So.3d 838. Thus, "ultimately, questions of relevancy and admissibility of evidence are discretionary calls for the trial court." *State v. Gorman*, 14-1108, p.17 (La.App. 1 Cir. 3/6/15), 166 So.3d 356, 369, *writ denied*, 12-2520 (La. 2/19/16), 186 So.3d 1173. Moreover, an "OWC judge has the discretion to admit evidence that would otherwise be inadmissible under the Louisiana Code of Evidence." *La. Commerce & Trade Ass'n, SIF v. Williams,* 14-1680 (La.App. 1 Cir. 6/5/15), 174 So.3d 696, 699. In other words, workers' compensation judges are not strictly bound by the technical rules of evidence and have the discretion to determine the admissibility of the evidence in a workers' compensation proceeding. La. R.S. 23:1317(A).

In the instant case, we find no abuse of the vast discretion afforded the workers' compensation judge in admitting Dr. Budden's report into evidence despite its alleged technical deficiencies, as Dr. Budden's opinion was reiterated in

his deposition, the admissibility of which was not in question. As noted above, "The workers' compensation judge shall not be bound by technical rules of evidence . . . ." La.R.S. 23:1317(A). Accordingly, this assignment of error lacks merit.

**ASSIGNMENT OF ERROR NUMBER FIVE:**

In her fifth assignment of error, Employee contends that the workers' compensation judge erred in failing to award any penalties, attorney fees, and expenses. We find merit to this contention.

When an issue raised on appeal posits a question of law, the standard of review is de novo wherein the appellate court determines whether the lower court was legally correct. *Tran v. Williams*, 10-1030 (La.App. 3 Cir. 2/9/11), 56 So.3d 1224.

Employee alleges that Employer improperly suspended her indemnity and medical benefits, and as such, she is entitled to penalties and attorney fees.

In *Futch v. Horseshoe Casino*, 146 So.3d at 827, the second circuit noted:

The penalty statute, R.S. 23:1201 F, is strictly construed W*illiams v. Rush Masonry*, 98-2271 (La.6/29/99), 737 So.2d 41, and penalties are not allowed if the employer has "some valid reason or evidence upon which to base his denial of benefits," *Brown v. Texas-La. Cartage Inc.*, 98-1063 (La.12/1/98), 721 So.2d 885.

. . . .

The penalty claim is therefore based on a finding of termination and regulated by R.S. 23:1201 I:

> I. Any employer or insurer who at any time discontinues payment of claims due and arising under the Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.

The award of a penalty and attorney fee under R.S. 23:1201 I is penal in nature, being imposed to discourage indifference and

undesirable conduct by employers and insurers. *Iberia Medical Ctr. v. Ward*, 2009-2705 (La.11/30/10), 53 So.3d 421. Although the Workers' Compensation Act is liberally construed as to benefits, its penal provisions are strictly construed. *Id*. Arbitrary and capricious behavior consists of "willful and unreasoning action, without consideration and regard for the facts and circumstances presented, or of seemingly unfounded motivation." *Id*.; *Brown v. Texas-La. Cartage, supra*; *Henderson v. Graphic Packaging Int'l*, 48,491 (La.App. 2 Cir. 11/20/13), 128 So.3d 599.

In the instant case, our review of the record reveals that Employer's suspension of Employee's medical and indemnity benefits was not arbitrary and capricious, or without probable cause, as Employee's medical benefits were properly suspended in accordance with La. R.S. 23:1124 due to Employee's refusal to submit to a neuropsychological evaluation, and that those benefits were later reinstated, and Employee was ordered to submit to a neuropsychological examination, which she did. Likewise, Employee's indemnity benefits were properly suspended when the IME's report indicated that Employee had reached maximum medical improvement and was able to return to work. Accordingly, the workers' compensation judge did not err in failing to award penalties, attorney fees, and expenses relative to the suspension of Employee's medical and indemnity benefits. The record further shows that the workers' compensation judge properly denied Employee's request for penalties and attorney fees relative to the alleged improper payment of Employee's medical bills and alleged underpayment of mileage, as the record does not support a finding that the workers' compensation judge committed manifest error in failing to find that outstanding medical bills and mileage are owed.

However, our review of the record indicates that Employee is entitled to an award of penalties and attorney fees based on Employer's failure to properly calculate Employee's weekly wage and to properly pay Employee's workers' compensation rate.

17

Louisiana Revised Statutes 23:1201F provides, in pertinent part:

F. Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section ... shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid ... together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. . . .

In the instant case, our review of the record reveals that Employee's check stubs were introduced at trial to show that at the time of her work accident Employee was earning $10.00 per hour. The workers' compensation insurer's payment records that Employer paid Employee at the incorrect worker's compensation rate of $226.68 weekly from May 23, 2014 through August 28, 2015, rather than at the correct rate of $283.77. The workers' compensation judge did not address this failure in the judgment. Thus, we find it was error for the judgment not to include an award for penalties and attorney fees based on Employer's failure to properly calculate Employee's average weekly wage and to properly pay Employee's workers' compensation rate. Accordingly, we find that an award of penalties in the sum of $2,000.00 is warranted. We further find that it was error for the judgment not to include an award of attorney fees for Employer's failure to properly calculate Employee's weekly wage and to properly pay Employee's workers' compensation rate. The record shows Employee's attorney was required to devote considerable time and effort at trial arguing this matter, as well as in preparing a brief for this appeal. Accordingly, we find an award of attorney fees in the sum of $6,000.00 is warranted.

**ASSIGNMENT OF ERROR NUMBER SIX:**

In her sixth assignment of error, Employee contends that the trial court erred in failing to award legal interest on all amounts owed. We find merit to this contention.

When an issue raised on appeal posits a question of law, the standard of review is de novo wherein the appellate court determines whether the lower court was legally correct. *Tran v. Williams*, 10-1030 (La.App. 3 Cir. 2/9/11), 56 So.3d 1224.

Louisiana Revised Statutes 23:1201.3 provides "Any compensation awarded and all payments thereof directed to be made by order of the workers' compensation judge shall bear judicial interest. . . ." Louisiana Revised Statutes 23:1310.5(B) provides "[t]he decision of the workers' compensation judge shall be final unless an appeal is made to the appropriate circuit court of appeal."

In the instant case, our review of the record shows that Employee's medical benefits were properly suspended as a result of her failure to submit to a neuropsychological evaluation. Those benefits were later reinstated, and Employee was ordered to submit to a neuropsychological evaluation, which she did. Accordingly, no legal interest is owed relative to this matter. Likewise, Employee's indemnity benefits were properly suspended when the IME report indicated that Employee had reached maximum medical improvement and was able to return to work. Accordingly, no legal interest is owed relative to this matter. Moreover, the record further shows that Employee's medical benefits and mileage were properly paid. Accordingly, no legal interest is owed relative to these matters.

However, legal interest is owed as a result of Employer's failure to properly calculate Employee's average weekly wage and to properly pay her workers' compensation rate. Accordingly, we render an award of legal interest for

19

Employer's failure to properly calculate Employee's average weekly wage and to properly pay Employee's workers' compensation benefits.

**CONCLUSION:**

Chelsea Jackson asserts six assignments of error as to why the workers' compensation judge erred in finding that some, but not all, of her injuries were causally related to her work accident of May 5, 2014; that she is not disabled as of February 1, 2016; that she is not entitled to payment of non-emergency care that was not pre-approved; and that she is not entitled to penalties, attorney fees, expenses, and legal interest. We find merit to Ms. Jackson's first assignment of error that the workers' compensation judge erred in failing to make a finding as to Ms. Jackson's average weekly wage and correct workers' compensation rate, as Aramark failed to properly calculate Ms. Jackson's average weekly wage and failed to properly pay her the correct workers' compensation rate. Accordingly, we reverse the Office of Workers' Compensation judgment on this issue, as Employee is entitled to the payment of benefits at the correct workers' compensation benefits rate. We do not find merit to Ms. Jackson's second assignment of error, that the worker's compensation judge erred in failing to award indemnity benefits, as Ms. Jackson's indemnity benefits were suspended when a court appointed IME issued a report that indicated that she had reached maximum medical improvement and was able to return to work, and Ms. Jackson's continued subjective complaints of pain are contrary to the objective medical findings. We do not find merit to Ms. Jackson's third assignment of error, that the workers' compensation judge erred in finding that her right arm and low back complaints are not causally related to her work accident of May 5, 2014, and in not addressing her right shoulder and hand injury, as Ms. Jackson had a multitude of pre-existing injuries, was reasonably deemed not to be credible at trial, and her continued subjective complaints of pain

20

are contrary to the objective medical findings. We do not find merit to Ms. Jackson's fourth assignment of error, that the workers' compensation judge erred in allowing into evidence and in relying upon the IME report of Dr. Budden, as workers' compensation judges are not strictly bound by the technical rules of evidence and have the discretion to determine the admissibility of the evidence in a workers' compensation proceeding, the evidence was relevant, and all relevant evidence is admissible. We do not find merit to Ms. Jackson's fifth assignment of error, that the workers' compensation judge erred in failing to award penalties, attorney fees, and expenses relative to the suspension of Ms. Jackson's medical benefits, as those benefits were properly suspended when Ms. Jackson failed to present for a neuropsychological examination. Further, Ms. Jackson's indemnity benefits were properly suspended when the IME report indicated that she had reached maximum medical improvement and was able to return to work. Moreover, we do not find that the workers' compensation judge erred in failing to award penalties, attorney fees, and expenses relative to the alleged improper payment of Ms. Jackson's medicals and the alleged underpayment of mileage, as the record does not support a finding that outstanding medicals and mileage are owed. However, we find that the workers' compensation judge erred in failing to award penalties and attorney fees for Aramark's failure to properly calculate Ms. Jackson's average weekly wage and to properly pay her workers' compensation rate when it was within Aramark's control to do so. Accordingly, we render an award of penalties in the sum of $2,000.00, for Aramark's failure to properly calculate Ms. Jackson's average weekly wage and to properly pay her correct workers' compensation rate. We render an award of attorney fees in sum of $6,000.00, as Ms. Jackson's attorney expended time arguing this matter at trial and in preparing a brief for this appeal. We find merit to Ms. Jackson's sixth

21

assignment of error that the workers' compensation judge erred in failing to award legal interest relative only to Aramark's failure to properly calculate Ms. Jackson's average weekly wage and to properly pay her workers' compensation rate when it was within its control to do so. Accordingly, we render an award of legal interest for Aramark's failure to properly calculate Ms. Jackson's average weekly wage and to properly pay her workers' compensation rate.

Costs of these proceedings are assessed to Aramark.

**REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.**